

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00347-CV

## IN THE INTEREST OF S.K.A., A CHILD,

**From the 13th District Court
Navarro County, Texas
Trial Court No. 07-16859-CV**

## MEMORANDUM OPINION

Following a bench trial, the trial court signed an order terminating both Donald's and Charlene's parental rights to their daughter, S.K.A. Donald and Charlene both appeal, asserting multiple issues. We will affirm the termination order.

### Legal and Factual Sufficiency

In Issues A.1 and B.1, Donald and Charlene assert that the evidence is legally and factually insufficient to support the trial court's findings that the termination of the parent-child relationship between each of them and S.K.A. was in the child's best interest. In Issues A.2 through A.6 and B.2 through B.5, they assert that the evidence is legally and factually insufficient to support the trial court's findings as to each of the predicate grounds for termination, and in Issue D.1, they assert that the evidence is

legally and factually insufficient to support the trial court's finding that the appointment of TDFPS as permanent managing conservator was in the child's best interest.

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Tex. Dep't of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the movant must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001 (termed a predicate violation); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (Vernon 2009); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766.

Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal

sufficiency review); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

> If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. A court of appeals should detail in its opinion why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.

*Id.* at 266-67 (footnotes and citations omitted). We view the evidence in a neutral light when reviewing for factual sufficiency.

*Best Interest of the Child*

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

For cases in which the department or another government agency is the petitioner, subsection 263.307(a) of the Family Code provides that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2009). Subsection (b) then lists thirteen factors the court, the department, or other authorized agencies should consider in determining whether a parent is "willing and able to provide the child with a safe environment." *Id.* § 263.307(b). In our review of the trial court's termination order, we will likewise give consideration to these factors to the extent applicable. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam); *In re S.N.*, 272 S.W.3d 45, 50-51 (Tex. App.—Waco 2008, no pet.); *In re T.N.F.*, 205 S.W.3d 625, 632-33 & n.3 (Tex. App.—

Waco 2006, pet. denied). We will address the best-interest finding separately for each parent.

*Charlene*

*Desires of the Child*: S.K.A.'s desires are unknown because she was less than one year old at the time of trial.

*The Child's Emotional and Physical Needs and the Emotional and Physical Danger to the Child*: Charlene points out in her brief that there is no evidence that S.K.A. will have any special physical or emotional needs beyond that of a normal child. Charlene's mother also testified that Charlene has bonded with S.K.A., such that S.K.A. misses her when she is not there. But other evidence on these two factors weighs heavily in favor of the finding that termination of Charlene's parental rights was in S.K.A.'s best interest.

At the time of trial, Charlene was facing incarceration for violating her probation. *See In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.—Amarillo 1999, no pet.) (noting that need for permanence is paramount consideration for child's present and future physical and emotional needs and that incarceration makes a parent's future uncertain). She was on probation after being convicted of one felony (evading arrest in a motor vehicle) and three misdemeanors (criminal mischief, possession of marijuana, and resisting arrest). The felony conviction came after she allegedly tried to run over her then one-year-old son's father with her car while the baby was in the car with her.

Although she testified at trial that she is now "clean," Charlene also admitted to a past history of drug use. *See May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) (stating that evidence of past misconduct may not itself be

sufficient to show present unfitness but adult's future conduct may well be measured by recent deliberate past conduct as it may be related to same or similar situation). Dawn Jock, the CPS employee who conducted the initial investigation in this case, testified that she went to the hospital just after S.K.A. was born because there had been an allegation of physical abuse: Charlene had tested positive for cocaine at the time of S.K.A.'s birth. Jock further testified that when S.K.A. was removed four days after she was born, Charlene took a hair follicle test and tested positive for a relatively high level of cocaine. Fortunately, there was no positive drug test on S.K.A. Charlene denied using cocaine but admitted "occasionally" using marijuana during her pregnancy with S.K.A. Dr. Douglas Cheatam, the clinical psychologist who performed Charlene's psychological evaluation, testified that Charlene not only acknowledged using marijuana during her pregnancy but also told him she knew that using marijuana during her pregnancy could have an effect on her baby.

Richard Boyer, Charlene's counselor, testified at trial that he had diagnosed Charlene with polysubstance abuse and personality disorder not otherwise specified. He testified that Charlene is still in a state of denial about some of her problems, such as whether she has an anger control problem, whether she is taking control of her finances, whether she is able to recall and apply what she has learned in parenting classes, and whether overall she has any problems with her children. Boyer further stated that Charlene has not made enough significant progress to warrant return of S.K.A. to her care. The evidence on these factors thus weighs in favor of the finding that termination of Charlene's parental rights was in the child's best interest.

*Parental Abilities and Available Programs*: The record contains conflicting evidence regarding these two factors. Charlene testified at trial that she had been attending NA, parenting classes, anger management classes, and counseling sessions. CPS had determined that Charlene's eleven-year-old daughter and twelve-year-old son should remain in her home. The children were doing very well in school and participated in extra-curricular activities. When the son had some behavioral problems, he saw a counselor and then had no further problems.

On the other hand, Charlene has had prior CPS cases beginning in 2002, with additional cases in 2003, 2004, 2006, and 2007, and custody of her third-eldest child has been given to his father. Deborah January, the ongoing CPS caseworker for S.K.A., testified that although Charlene took parenting classes, there was a notation in one of the classes that she did not take the class seriously. January further testified that Charlene had not been able to verbalize what she had learned in the parenting classes. When January asked Charlene to discuss what she had learned in the classes, January was met with animosity or some comment about it not being necessary. *See Wilson v. State*, 116 S.W.3d 923, 930 (Tex. App.—Dallas 2003, no pet.) (considering lack of motivation in improving poor parenting skills in best-interest determination). Moreover, as stated above, Boyer, Charlene's counselor, testified that she had not made enough significant progress to warrant return of S.K.A. to her care.

*Plans for Child and Stability of Home*: Charlene testified that she and Donald have been in a relationship for two years and are engaged to be married. Charlene's older children consider Donald their father. Donald works at Wal-Mart and takes home

about $1,500 per month, and Charlene had just started working at McDonald's two weeks before trial. If S.K.A. returned to her parents, she would live with Donald, Charlene, and Charlene's two oldest children in a two-bedroom mobile home. Donald testified that S.K.A. would either sleep in the bedroom where Charlene and her daughter sleep or in the living room where he sleeps. Charlene and Donald have also been looking for a larger home.

Charlene does admit in her brief that she "does face a short incarceration which will cause some instability at least for that period of time." Furthermore, Donald is not divorced from his current wife. January also testified that Charlene and Donald have not been compliant in the Service Plan's requirement that they maintain stability in their lives over time. She testified that there is a lot of financial instability, and since she has been involved in the case, she has not seen any proof of Charlene working. Donald and Charlene do not own a home, and although they have been trying to buy a home throughout the duration of the case, they have not secured anything. As stated above, Charlene has a history of prior CPS cases, and custody of her third-eldest child has been given to his father. Donald also has some history with CPS. His other child lives with the child's maternal grandparents. The evidence on these factors thus weighs in favor of the finding that termination of Charlene's parental rights was in the child's best interest.

*Charlene's Acts or Omissions and Any Excuses for Those Acts or Omissions*: Charlene admits in her brief that her acts or omissions weigh in favor of termination. She has a criminal history. In addition, a total of four motions have been filed to revoke her

probation. She has not made any child support payments for S.K.A., and January testified that she was not in compliance with the CPS Service Plan. Charlene admitted to a history of drug use and to using marijuana during her pregnancy with S.K.A. She testified that some doctors state that using marijuana is not harmful to an unborn child and that she otherwise never used drugs around her children.

*Statutory Factors*: Of the thirteen factors, evidence on three factors weighs in favor of the finding that termination was in the child's best interest: subsection (6)—the results of Donald's and Charlene's psychological evaluations; subsection (8)—the history of substance abuse by both Donald and Charlene; and subsection (11)—the willingness and ability of Donald and Charlene to effect positive environmental and personal changes within a reasonable period of time. The evidence on the remaining statutory factors is either neutral or inapplicable.

*Summary*: Considering all the evidence in relation to the best interest factors in the light most favorable to the trial court's finding, a reasonable trier of fact could have formed a firm belief or conviction that termination of Charlene's parental rights was in the child's best interest. And viewing all the evidence in a neutral light, we conclude that both the disputed and undisputed evidence favoring and disfavoring the finding permits a reasonable factfinder to form a firm conviction and belief that termination of Charlene's parental rights was in S.K.A.'s best interest. The evidence on termination of Charlene's parental rights being in S.K.A.'s best interest is legally and factually sufficient. We overrule Issue A.1.

*Donald*

*Desires of the Child*: S.K.A.'s desires are unknown because of her age.

*The Child's Emotional and Physical Needs and the Emotional and Physical Danger to the Child*: As did Charlene, Donald points out in his brief that there is no evidence that S.K.A. will have any special physical or emotional needs beyond that of a normal child. Charlene's mother also testified that Donald has bonded with S.K.A., such that S.K.A. misses him when he is not there. But again, other evidence on these two factors weighs heavily in favor of the finding that termination of Donald's parental rights was in the child's best interest.

Although he claimed he had not used methamphetamine in over a year, Donald admitted to a past history of methamphetamine use, which caused CPS to become involved with his family. *See May*, 829 S.W.2d at 377. He reported to Dr. Cheatam, the clinical psychologist who performed his psychological evaluation, that he voluntarily signed over the custody rights to his then five-year-old son to the maternal grandparents in order to facilitate an end to CPS involvement. Donald also acknowledged that he has a history of cocaine and marijuana use, including as recently as a couple of months before Dr. Cheatam's evaluation. Jock testified that on the day S.K.A. was removed, Donald took a hair follicle test and tested positive for a relatively high level of cocaine. Donald also acknowledged that he was aware that Charlene used drugs during her pregnancy with S.K.A.

Boyer, Donald's counselor, testified that he diagnosed Donald with polysubstance abuse disorder. When Boyer was asked whether Donald would be a

danger to S.K.A., he replied that his immediate concern would be "lack of progress in the services that he was Court ordered to participate in" and "lack of progress in counseling." Boyer further explained, "It's an indication of him not following through with what he's been asked to do to show that he is a responsible parent." Boyer also expressed concern with Donald's passivity. Boyer explained that Donald does not deny his problems, but instead, dismisses them. He does not admit to the things he needs to work on regarding this case. The evidence on these factors thus weighs in favor of the finding that termination of Donald's parental rights was in the child's best interest.

*Parental Abilities and Available Programs*: The record contains conflicting evidence regarding these two factors. At the time of trial, Donald was attending NA, parenting classes, anger-management classes, and counseling sessions. CPS had determined that Charlene's eleven-year-old daughter and twelve-year-old son should remain in the home that he shared with Charlene. Charlene testified that the children consider Donald their father. The children were doing very well in school and participated in extra-curricular activities. When Charlene's eldest son had some behavioral problems, he saw a counselor and then had no further problems.

On the other hand, January testified that when Charlene had previously been incarcerated, Donald "had some issues with taking care of the children." She stated that the grandmother actually did a lot of the caretaking. January further testified that Donald had not been able to verbalize what he had learned in the parenting classes. When January asked Donald to discuss what he had learned in the classes, she was met with animosity or some comment about it not being necessary. *See Wilson*, 116 S.W.3d

at 930. Moreover, when Boyer was asked whether he felt Donald and Charlene were prepared to have S.K.A. back in their home and whether they would be able to parent her appropriately, he replied that he had seen no "evidence of progress and them advancing from the point where the child was removed."

*Plans for Child and Stability of Home*:  Because Donald and Charlene share a home and have both expressed the same plans for S.K.A., we refer to our prior analysis for Charlene as to these factors.  The evidence on these factors weighs in favor of the finding that termination of Donald's parental rights was in the child's best interest.

*Donald's Acts or Omissions and Any Excuses for Those Acts or Omissions*:  Donald states in his brief that his acts or omissions are limited to his drug use and that this factor does weigh in favor of termination.  Donald admitted to a history of drug use from stress and bad choices.  Because of his methamphetamine use, CPS became involved, and he voluntarily signed over the custody rights to his son to the maternal grandparents.  January also testified that Donald was not in compliance with the CPS Service Plan.

*Statutory Factors*:  Again, because Donald and Charlene share a home, we refer to our prior analysis for Charlene as to these factors.

*Summary*:  Considering all the evidence in relation to the best interest factors in the light most favorable to the trial court's finding, a reasonable trier of fact could have formed a firm belief or conviction that termination of Donald's parental rights was in the child's best interest.  And viewing all the evidence in a neutral light, we conclude that both the disputed and undisputed evidence favoring and disfavoring the finding

permits a reasonable factfinder to form a firm conviction and belief that termination of Donald's parental rights was in S.K.A.'s best interest. The evidence on termination of Donald's parental rights being in S.K.A.'s best interest is legally and factually sufficient. We overrule Issue B.1.

*Predicate Grounds for Termination*

The trial court made affirmative findings on the following predicate grounds for termination for both Donald and Charlene:

- knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

- engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

- failed to support the child in accordance with the mother's ability during a period of one year ending within six months of the date of the filing of the petition; and

- failed to comply with the provisions of a court order that specifically established the actions necessary for the parents to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (TDFPS) for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*See* TEX. FAM. CODE ANN. § 161.001(1)(D)-(F), (O). The court also made an affirmative finding on the following additional predicate ground for termination for Charlene: used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance. *See id.* §

161.001(1)(P). Donald and Charlene challenge the legal and factual sufficiency of all of these findings, but proof of only one predicate act under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

*Charlene*

Section 161.001(1)(E) of the Family Code states that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E). "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, it is not necessary that the child actually suffer injury. *Id.*

Termination under subsection E must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required. *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). It is inconsequential that the parental conduct considered in a termination proceeding occurred before the child's birth. Rather, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. *Id.*; *Avery v. State*, 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ).

A mother's use of drugs during her pregnancy is conduct that endangers the physical and emotional well-being of the child. *In re W.A.B.*, 979 S.W.2d 804, 806 (Tex. App.—Houston [14th Dist.] 1998, pet. denied), *disapproved of on other grounds by J.F.C.*, 96

S.W.3d at 267 n.39; *see Dupree v. Tex. Dep't of Prot. & Reg. Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). Jock testified that she went to the hospital just after S.K.A. was born because Charlene had tested positive for cocaine at the time of S.K.A.'s birth. She further testified that when S.K.A. was removed four days later, Charlene and Donald took a hair follicle test and both tested positive for a relatively high level of cocaine.

Charlene argues that she denied using cocaine while pregnant and that the test was not entered into evidence and has not been proven by scientific testimony. But even if we disregard the testimony about her testing positive for cocaine, Charlene admitted that she has a history of illegal drug use and that she "occasionally" used marijuana during her pregnancy with S.K.A. Although she tried to explain this drug use at trial by testifying that some doctors state that using marijuana is not harmful to an unborn child, she admitted to her counselor that she knew using marijuana during her pregnancy would have an effect on her baby but that she felt the use was infrequent enough that it would not permanently hurt the child. Furthermore, as part of the Service Plan provided to her by CPS, Charlene was required to participate in NA or AA, but at the time of trial, she testified that she had only begun participating in NA during the prior two weeks.

Using the appropriate standards of review for legal and factual sufficiency, we conclude that the evidence is such that a factfinder could reasonably form a firm belief or conviction that Charlene engaged in conduct or knowingly placed S.K.A. with persons who engaged in conduct that endangered her physical and emotional well-

being. The evidence is thus legally and factually sufficient to support the trial court's finding on that predicate ground for termination as to Charlene. We overrule Issue A.3. Moreover, because we have found the evidence legally and factually sufficient to support the finding that Charlene engaged in conduct or knowingly placed S.K.A. with persons who engaged in conduct that endangered her physical and emotional well-being, we need not address the sufficiency of the evidence to support the other predicate grounds as to Charlene (Issues A.2, A.4, A.5 and A.6). *See A.V.*, 113 S.W.3d at 362.

*Donald*

Section 161.001(1)(D) of the Family Code states that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D). Once again, "endanger" means to expose to loss or injury or to jeopardize, but it is not necessary that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533.

Donald admitted to Dr. Cheatam that he knew Charlene was using drugs while she was pregnant with S.K.A. Although he told Dr. Cheatam he thought her drug use during the pregnancy was "stupid," there is no evidence that he did anything to stop it. Rather, he admitted that he was also using marijuana and cocaine during that time frame. Jock testified that on the day S.K.A. was removed, Donald took a hair follicle test and tested positive for a relatively high level of cocaine.

The relevant conduct includes not only the parents' conduct as evidenced by the parents' acts, but also the parents' omissions or failures to act. *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied); *Edwards v. Tex. Dep't of Prot. & Reg. Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39. Furthermore, as stated above, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. *In re D.M.*, 58 S.W.3d at 812; *Avery*, 963 S.W.2d at 553.

Donald's failure to take any action to protect S.K.A. from Charlene's drug abuse is sufficient to establish that he knowingly allowed the child to remain in conditions or surroundings that endangered her physical well-being. *See Edwards*, 946 S.W.2d at 138. The evidence is thus legally and factually sufficient to support the trial court's finding on that predicate ground for termination as to Donald. We overrule Issue B.2. Moreover, because we have found the evidence legally and factually sufficient to support the finding that Donald knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, we need not address the sufficiency of the evidence to support the other predicate grounds as to Donald (Issues B.3, B.4, and B.5). *See A.V.*, 113 S.W.3d at 362.

### TDFPS as Permanent Managing Conservator

Donald and Charlene argue that the trial court erred in appointing TDFPS as S.K.A.'s permanent managing conservator because the appointment of a parent would not significantly impair S.K.A.'s physical or emotional health. However, we concluded

above that the evidence is legally and factually sufficient to support the trial court's findings as to at least one predicate violation for each parent and that termination was in the best interest of the child. Thus, the trial court properly terminated Donald and Charlene's parental rights to S.K.A. *See* TEX. FAM. CODE ANN. § 161.001; *Swate*, 72 S.W.3d at 766. Section 161.207 of the Family Code states, "If the court terminates the parent-child relationship with respect to both parents . . . , the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as managing conservator of the child." TEX. FAM. CODE ANN. § 161.207 (Vernon 2009). Thus, the trial court did not err in appointing TDFPS as permanent managing conservator of the child. We overrule Issue D.1.

## Ineffective Assistance of Counsel

In Issue C.1, Donald and Charlene contend that they received ineffective assistance of counsel. In analyzing the effectiveness of counsel in a parental-rights termination case, we follow a two-pronged standard set forth by the United States Supreme Court in *Strickland v. Washington* to determine whether an attorney's representation was so inadequate to violate the right to effective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To show ineffective assistance of counsel in a termination case, the appellant must show (1) that counsel's assistance fell below an objective standard of reasonableness and (2) that counsel's deficient assistance, if any, prejudiced the parent. *Id*. (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

*Strickland*'s "record" requirement also applies to ineffective-assistance claims in termination cases: "An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *In re S.R.C.*, No. 2-02-426-CV, 2003 WL 22966325 at *2 (Tex. App.—Fort Worth Dec. 18, 2003, no pet.) (mem. op.) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). In a parental-rights termination case where the parent asserts on appeal the ineffective assistance of trial counsel, but nothing in the record indicates trial counsel's reasons or strategies for the complained-of conduct, the lack of a record is practically always fatal to the parent's appellate issue under current Texas law. Because this inequity existed in this appeal, and because Donald and Charlene have no other recourse to address this issue, we abated and remanded the cause to the trial court for a hearing at which Donald and Charlene could develop an evidentiary record in connection with their ineffective assistance of counsel claim. *See In re T.N.F.*, 191 S.W.3d 329, 332 (Tex. App.—Waco 2006, order) (per curiam); *In re K.K.*, 180 S.W.3d 681, 687-88 (Tex. App.—Waco 2005, order) (per curiam). We also provided them time to file a supplemental brief addressing their ineffective assistance of counsel claim in light of the evidentiary hearing. We received a supplemental reporter's record but have not received supplemental briefs. Thus, we will address the merits of Donald and Charlene's ineffective-assistance claims as presented in their original briefing.

Donald and Charlene both assert that their trial counsel was ineffective because he: (1) failed to file a motion for continuance; (2) failed to investigate the case; (3) failed to call witnesses to rebut petitioner's claims; and (4) failed to undertake discovery. But

Donald and Charlene have not demonstrated that counsel's alleged errors had an effect on the outcome of the proceeding such that its result would have been different.

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S.Ct. at 2070.

Donald and Charlene only address the second prong of *Strickland* in relation to their argument that trial counsel failed to request a continuance. They argue that if the trial date had been continued, they would have had additional time to complete the Service Plan, and, considering the progress that they had already made, the fact that they were not given additional time clearly prejudiced their case. But Boyer testified that he had not seen any evidence of progress by either parent from the time when S.K.A. was removed. He testified that Charlene was still in a state of denial about many of her problems and that she had not made enough significant progress to warrant return of S.K.A. to her care. Likewise, when Boyer was asked whether Donald would be a danger to S.K.A., he replied that his immediate concern would be "lack of progress in the services that he was Court ordered to participate in" and "lack of progress in counseling." Boyer also expressed concern with Donald's passivity, meaning he

dismisses his problems and will not admit to the things he needs to work on regarding this case.

For these reasons, we conclude that Donald and Charlene failed to demonstrate prejudice and cannot establish ineffective assistance of counsel. We overrule Issue C.1.

**Conclusion**

We affirm the trial court's termination order.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurs in the judgment of the Court only and only to the extent that it affirms the trial court's order terminating the parental rights of Donald and Charlene as to S.K.A.)
Affirmed
Opinion delivered and filed August 19, 2009
[CV06]